UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SUSAN GREMBOWIEC**<br><br>Plaintiff,<br><br>v.<br><br>**SELECT PORTFOLIO SERVICING, INC.**<br><br>Defendant. | **COMPLAINT FOR DAMAGES**<br><br>JURY DEMAND ENDORSED HEREON |

Plaintiff Susan Grembowiec, by and through counsel, states as follows for her Complaint against Select Portfolio Servicing, Inc.:

**INTRODUCTION, PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Susan Grembowiec ("Plaintiff" or "Grembowiec") is the owner of real property and improvements located at and commonly known as 22 West Street, Elmwood Park, NJ 07407 (the "Home").

2. Grembowiec has, at all times relevant, maintained the Home as her primary, principal residence and continues to maintain the Home as such.

3. Defendant Select Portfolio Servicing, Inc. ("SPS") is a limited liability company established under the laws of the State of Delaware. SPS maintains its principal place of business at 654 South Decker Lake Drive, Salt Lake City, UT 84119. SPS is the servicer for mortgage loans across the United States, including servicing mortgages for properties in the State of New Jersey.

4. SPS is the current servicer of a note used to purchase the Home (the "Note") and a mortgage on the Home that secures the Note (the "Mortgage") (hereinafter collectively referred to as the "Loan").

5. Grembowiec originated the Loan with Real Estate Mortgage Network, Inc. on or about December 22, 2006. The Loan was ultimately assigned to a securitized trust for which Federal National Mortgage Association ("Fannie Mae") acts as Trustee.

6. SPS has serviced the Loan since at all times relevant to the allegations contained in this pleading.

7. At all relevant times, SPS acted with the full authority of and as the servicing agent for the relevant owner of the Loan.

8. Jurisdiction of claims against SPS is conferred by 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA). This action is further specifically filed, in part, to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.41 of Regulation X of RESPA.

9. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

10. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Grembowiec purchased the Home for her primary residence within the District, SPS does business in this District, and the conduct complained of took place primarily in this District.

## **SUMMARY OF CLAIMS**

11. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12. Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13. The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

14. SPS is subject to the aforesaid regulations and each does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

15. Plaintiff asserts a claim for relief against SPS for breaches of the specific rules under Regulation X as set forth, *infra*.

16. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches of Regulation X and such action provides for remedies including actual damages, costs, statutory damages, and attorney's fees.

## STATEMENT OF FACTS

17. As with many other individuals throughout the country, Grembowiec has encountered some economic difficulties with imminent further difficulties. Wanting to keep the House and desiring nothing more than to remain a responsible mortgage paying citizen, Grembowiec attempted to take the necessary actions to modify the Loan with SPS.

18. On May 9, 2018, Grembowiec, with her counsel DannLaw acting as her agent, submitted a loss mitigation application to SPS via email to relationship.manager@spservicing.com (the "First Application"). A copy of the email confirmation of such correspondence is attached as *Exhibit 1*.

19. On or about May 14, 2018 and May 25, 2018, SPS sent correspondence to Grembowiec, stating that she needed to submit additional documentation to complete the First Application and proceed with the loss mitigation process ("Request #1"). A copy of Request #1 is attached as *Exhibit 2*.

20. In full compliance with Request #1, on May 21, 2018 and June 1, 2018, Grembowiec submitted all of the requested documentation to SPS via facsimile transmission to 1(866)867-3019 ("Response to Request #1"). Proof of successful fax transmission of the Response to Request #1 is attached as *Exhibit 3*.

21. Between June 1, 2018 and July 13, 2018, Grembowiec did not receive any further correspondence or communication from SPS requesting supplementary information to complete the First Application nor did Grembowiec receive any correspondence from SPS acknowledging that the First Application was complete.

22. On July 17, 2018, Grembowiec, through counsel, received correspondence from SPS dated July 13, 2018, stating that SPS "previously received [the Borrower's] request for assistance; however, [the Borrower's] application has been incomplete with no activity for over 30 days. Based on the application being incomplete and your current payment status we are closing your request for assistance at this time" (the "Closing Letter"). A copy of the Closing Letter is attached as *Exhibit 4*.

23. On or about July 19, 2018, Grembowiec, through counsel, sent correspondence to SPS via facsimile transmission to 1(801)270-7856 captioned "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(c)(3); Notice of Error pursuant to 12 C.F.R. §1024.35(b)(11) for violation 12 C.F.R. §1024.41(b)" ("NOE #1"). A copy of NOE #1 along with proof of successful facsimile transmission of the same is attached as *Exhibit 5*.

24. Through NOE #1, Grembowiec alleged that SPS committed an error in relation to the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by either failing to exercise reasonable diligence to obtain a complete First Application from Grembowiec as required by 12 C.F.R. §1024.41(b)(1) or by failing to acknowledge a complete First Application from Grembowiec in writing as required by 12 C.F.R. §1024.41(c)(3).  See *Exhibit 5*.

25. Grembowiec sent NOE #1 to SPS at the facsimile number designated by SPS for receipt of requests for information and notices of error the ("Designated Number"). A copy of a mortgage statement for the Loan dated July 12, 2018, establishing and notifying Grembowiec of the Designated Number is attached as *Exhibit 6*.

26. SPS received NOE #1 at the Designated Number on or about July 19, 2018. See *Exhibit 5*.

27. SPS sent correspondence in response to NOE #1 on or about August 17, 2018 (the "Response to NOE #1"). A copy of the Response to NOE #1 is attached as *Exhibit 7*.

28. Through Response to NOE #1, SPS claimed that no errors occurred as alleged through NOE #1 further stating:

> SPS initiated an Assistance Review Application on May 11, 2018. On May 14, 2018, we sent the enclosed Required Information Notice indicating the required documentation needed to begin our review.  Additional correspondence was sent on May 25, 2018, requesting updated bank statements.  SPS spoke with your client

> Susan Grembowiec on June 11, 2018 and June 28, 2018, where she advised SPS she will send in updated bank statements reflecting rental income. SPS received one statement; however, we require two complete bank statements. Because we did not receive the statements within the document timeline, the review was closed.

*See Exhibit 7.*

29. As SPS refused to acknowledge their alleged errors and closed out their review of the First Application, on or about September 4, 2018, Grembowiec, through counsel, submitted another loss mitigation application to SPS via both email at relationship.manager@spservicing.com and via facsimile at 1-866-867-3019 (the "Second Application"). Proof of successful fax transmission of the Second Application is attached as *Exhibit 8*.

30. On or about September 12, 2018, SPS sent correspondence to Grembowiec, stating that she needed to submit additional documentation to complete the Second Application and proceed with the loss mitigation process ("Request #2"). A copy of Request #2 is attached as *Exhibit 9*.

31. In full compliance with Request #2, on September 25, 2018, Grembowiec submitted all of the requested documentation to SPS via facsimile transmission to 1(866)867-3019 ("Response to Request #2"). A copy of the cover page for the Response to Request #2 is attached as *Exhibit 10*.

32. Between September 25, 2018 and October 26, 2018, Grembowiec did not receive any further correspondence or communication from SPS requesting supplementary information to complete the Second Application nor did Grembowiec receive any correspondence from SPS acknowledging that the Second Application was complete.

33. On or about October 26, 2018, Grembowiec, through counsel, sent correspondence to SPS via facsimile transmission to 1(801)270-7856 captioned "Notice of Error under 12 C.F.R. §1024.35(b)(11) for failing to properly investigate and respond to a borrower's Notice of Error pursuant to 12 C.F.R. §1024.35(e); Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(b)(1) or 12 C.F.R. § 1024.41(c)(3)" ("NOE #2"). A copy of NOE #2 along with email confirmation of the same is attached as *Exhibit 11*.

34. Through NOE #2, Grembowiec alleged that SPS committed an errors in relation to the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by: (1) failing to properly investigate the errors alleged by and through NOE #1 as evidenced by their Response to NOE #1; and (2) by, again, either failing to exercise reasonable diligence to obtain obtain a complete Application from the Grembowiec as required by 12 C.F.R. §1024.41(b)(1) or by failing to acknowledge the a complete Application from Grembowiec in writing as required by 12 C.F.R. §1024.41(c)(3). See *Exhibit 11*.

35. Specifically as to SPS's failure to reasonably investigate the errors alleged through NOE #1, Grembowiec alleged that Response to NOE #1 references Request #1 which specifically requested that Grembowiec "provide one more recent Bank Statement with rental income deposit circled, not older than 90 days or provided clarification on the date of the deposit" and that Grembowiec supplied such information through Response to Request #1, but while SPS acknowledges that they received one statement, they claim to require two complete bank statements,yet provided no explanation as to why the May 25, 2018 correspondence only requested only one additional bank statement when two were required.

36. Furthermore as to SPS's failure to reasonably investigate the errors alleged through NOE #1, specifically the alleged error of SPS's lack of reasonable diligence in obtaining a complete First Application, SPS claimed that Grembowiec did not provide the statements within the document timeline, yet no such deadline was ever provided to Grembowiec.

37. SPS sent correspondence to Grembowiec in response to NOE #2 on or about November 21, 2018 ("Response to NOE #2"). A copy of Response to NOE #2 is attached as *Exhibit 12*.

38. Through Response to NOE #2, stated that the Second Application was received on September 12, 2018 and that Grembowiec needed to submit updated "710 Form" "three additional, most recent paystubs" and "signed and dates 2017 Federal Tax Returns". See *Exhibit 12*.

39. SPS did not make any reference to the errors alleged by and through NOE #2, nor did they provide any proof that SPS previously requested documents necessary to complete the Second Application prior to Response to NOE #2--that is, SPS did not contest that they did not request any required information to complete the Second Application between September 25, 2018 and November 21, 2018. See *Exhibit 12*.

## IMPACT AND DAMAGE

40. SPS's actions in failing to properly handle the loss mitigation process for the Loan despite being put on notice of their errors has caused Grembowiec to incur attorneys' fees and costs to attempt to obtain correct such errors and to submit multiple loss mitigation applications which would have been unnecessary but for SPS's actions.

41. Further, as mortgage interest rates have increased during the period SPS has improperly delayed the loan modification process, the modification that Grembowiec will eventually obtain will be at an increased interest rate than it would have been but for SPS's erroneous actions.

42. As a modification would lower Grembowiec's interest rate and payment, Grembowiec has been remitting periodic payments at a higher amount than she would be but for SPS's mishandling of the loss mitigation process costing Grembowiec the use of and time loss of such additional funds paid to SPS since June 2018.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SPS**

43. SPS's actions are part of a pattern and practice of behavior in violation of Grembowiec's rights and in abdication and contravention of SPS's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

44. At the time of the filing of this Complaint, SPS has had at least Three Thousand Four Hundred Ninety Nine (3,499) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

45. Grembowiec has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by SPS against other borrowers. In particular, Grembowiec has reviewed the fifteen (15) consumer complaints attached hereto and identified as *Plaintiff's Group Exhibit 13*. The date, details, and a narrative disclosed by the consumer is set

forth in each complaint. The complaints evidence conducts which demonstrates that SPS has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

## COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.41(b) OR 12 C.F.R. § 1024.41(c)(3)

### (Failure to exercise reasonable diligence in obtaining documents and information to complete the First Application)

46. Grembowiec restates and incorporates all of her statements and allegations contained in paragraphs 1 through 45, in their entirety, as if fully rewritten herein.

47. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

48. 12 C.F.R. § 1024.41(b) provides that "a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

49. The CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B) provides that:

> Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1). See § 1024.41(c)(2)(iv) addressing facially complete applications.

50. Moreover, 12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that: "[i]f the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs

(f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application.

51. SPS failed to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the First Application.

52. Grembowiec submitted the Second Application on or about May 9, 2018, Grembowiec via both email at relationship.manager@spservicing.com and via facsimile at 1-866-867-3019. See *Exhibit 1*.

53. SPS sent Request #1 to Grembowiec on or about May 14, 2018. See *Exhibit 2*.

54. Grembowiec submitted submitted all of the documentation requested through Request #1 to SPS via facsimile transmission to 1(866)867-3019 on or about June 1, 2018 via Response to Request #1. See *Exhibit 3*.

55. Between June 1, 2018 and July 13, 2018, Grembowiec did not receive any further correspondence from SPS requesting supplementary information to complete the First Application nor did Grembowiec receive any correspondence from SPS acknowledging that the First Application was complete.

56. Rather, Grembowiec received the Closing Letter on or about July 17, 2018. See *Exhibit 4*.

57. Through Response to NOE #1, SPS claimed that they had reached out to Grembowiec telephonically on June 11, 2018 and June 28, 2018, but provided no evidence of the same.

58.     Further, even if SPS did reach out to Grembowiec telephonically, this is insufficient to be reasonably diligent on its own as such would require SPS to reach out to Grembowiec or her counsel via writing at least once.

59.     SPS's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Second Application as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b), constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

60.     SPS's actions caused Grembowiec to suffer actual damages as further described, *supra*, including but not limited to necessitating the sending of NOE #1 and NOE #2.

61.     SPS's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Grembowiec's rights.

62.     As a result of SPS's actions, SPS is liable to Grembowiec for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT TWO: VIOLATION OF 12 C.F.R. § 1024.41(b) OR 12 C.F.R. § 1024.41(c)(3)**

**(Failure to exercise reasonable diligence in obtaining documents and information to complete the Second Application)**

63.     Grembowiec restates and incorporates all of her statements and allegations contained in paragraphs 1 through 45, in their entirety, as if fully rewritten herein.

64.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

65.     12 C.F.R. § 1024.41(b) provides that "a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

66. The CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B) provides that:

> Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1). See § 1024.41(c)(2)(iv) addressing facially complete applications.

67. Moreover, 12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that: "[i]f the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application.

68. Grembowiec submitted the Second Application on or about September 4, 2018, Grembowiec via both email at relationship.manager@spservicing.com and via facsimile at 1-866-867-3019. See *Exhibit 8*.

69. SPS sent Request #2 to Grembowiec on or about September 12, 2018. See *Exhibit 9*.

70. Grembowiec submitted submitted all of the documentation requested through Request #2 to SPS via facsimile transmission to 1(866)867-3019 on September 25, 2018 via Response to Request #2. See *Exhibit 10*.

71. Between September 25, 2018 and October 26, 2018, Grembowiec did not receive any further correspondence or communication from SPS requesting supplementary information to complete the Second Application nor did Grembowiec receive any correspondence from SPS acknowledging that the Second Application was complete.

72. SPS did not attempt to make any further efforts to obtain the necessary documentation to complete the Second Application until sending Response to NOE #2 on or about November 21, 2018 which stated that Grembowiec needed to submit updated "710 Form" "three additional, most recent paystubs" and "signed and dates 2017 Federal Tax Returns". See *Exhibit 12*.

73. SPS's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Second Application as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b), constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

74. SPS's actions caused Grembowiec to suffer actual damages as further described, *supra*, including but not limited to necessitating the sending of NOE #2.

75. SPS's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Grembowiec's rights.

76. As a result of SPS's actions, SPS is liable to Grembowiec for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT THREE**: **VIOLATION OF 12 C.F.R. § 1024.35(e)**

**(Failure to properly respond to NOE #1)**

77. Grembowiec restates and incorporates all of her statements and allegations contained in paragraphs 1 through 45, in their entirety, as if fully rewritten herein.

78. 12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

79. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

80. Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards the borrower's mortgage loan.

81. 12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

82. NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 5*.

83. SPS received NOE #1 to the Designated Number SPS designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c). *See Exhibit 5*.

84. Through NOE #1, Grembowiec alleged that SPS committed an error in relation to the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by either failing to exercise reasonable diligence to obtain a complete First Application from Grembowiec as required by 12 C.F.R. §1024.41(b)(1) or by failing to acknowledge a complete First Application from Grembowiec in writing as required by 12 C.F.R. §1024.41(c)(3). See *Exhibit 5*.

85. SPS claimed through Response to NOE #1 that no errors occurred as alleged through NOE #1 stating that the First Application was not complete because only one bank statement evidencing rental income was submitted. See *Exhibit 7*.

86. SPS's statement that the First Application was incomplete due to the bank statements evidences their lack of a reasonable investigation into the errors alleged by and through NOE #1 as Request #1 specifically requested that Grembowiec "provide one more recent Bank Statement with rental income deposit circled, not older than 90 days or provided clarification on the date of the deposit" but SPS now claims that two more were needed through Response to NOE #1.

87. A reasonable investigation would have clearly determined that SPS requested one such bank statement and that the Borrower complied with such request.

88. Moreover, at no point in time through Response to NOE #1 does SPS provide any explanation as to why Request #1 correspondence only requested only one additional bank statement when two were purportedly required.

89. Further, concerning the alleged error of SPS's lack of reasonable diligence in obtaining a complete First Application, SPS claimed that Grembowiec did not provide the statements within the document timeline, yet no such deadline was ever provided to Grembowiec--something a reasonable investigation would have determined.

90. SPS's failure to correct the errors alleged through NOE #1 or to alternatively perform a reasonable investigation of such constitutes clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e).

91. SPS's actions caused Grembowiec to suffer actual damages as further described, *supra*, including but not limited to necessitating the sending of NOE #2 in further attempt to have SPS correct the errors alleged through NOE #1.

92. SPS's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Grembowiec's rights.

93. As a result of SPS's actions, SPS is liable to Grembowiec for actual damages, statutory damages, costs, and attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Susan Grembowiec, respectfully requests that this Court enter an order granting Judgment against Defendant Select Portfolio Servicing, Inc. as follows

    a. For actual damages against Defendant as to all allegations contained in Counts One through Three;


b. For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant for each and every violation of 12 C.F.R. § 1024.41 as alleged in in Counts One and Two;

c. For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant for each and every violation of 12 C.F.R. § 1024.35 as alleged in in Count Three;

d. For costs and reasonable attorney fees against Defendant as to all allegations contained in Count One through Three; and,

e. For all other relief this Court may deem just and proper.

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
201/355-3440
Fax (216) 373-0536
notices@dannlaw.com

**Jury Demand**

Grembowiec hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
DannLaw