Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SUSAN GREMBOWIEC,

*Plaintiff,*

v.

SELECT PORTFOLIO SERVICING, INC.,

*Defendant.*

Civil Action No. 18-16885

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Plaintiff Susan Grembowiec alleges that Defendant Select Portfolio Servicing, Inc., failed to meet its obligations under Regulation X, 12 C.F.R. § 1024 *et seq.*, of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, in reviewing Plaintiff's loan modification applications. D.E. 1. Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. D.E. 5. The Court reviewed the parties' submissions in support and in opposition[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to dismiss is denied.

---

[1] Defendant's brief in support of its motion will be referred to as "Def. Br.," D.E. 5-1; Plaintiff's opposition will be referred to as "Pl. Opp'n," D.E. 8; Defendant's reply will be referred to as "Def. Reply," D.E. 9.

## I. BACKGROUND[2]

Plaintiff owns real property in Elmwood Park, New Jersey (the "Property"). Compl. ¶ 1. In order to purchase the Property in 2006, Plaintiff took out a note secured by a mortgage (collectively the "Loan") on the Property. *Id.* ¶ 5. Defendant is the servicer of the Loan. *Id.* ¶¶ 4-7. This action arises out of Defendant's conduct in response to (a) Plaintiff's two loss mitigation applications (collectively the "Applications") regarding the Loan, and (b) Plaintiff's two notices of error (collectively the "Notices") regarding the Applications. *Id.* ¶¶ 46-93.

On May 9, 2018, Plaintiff, represented by counsel, submitted her first loss mitigation application (the "First Application") to Defendant. *Id.* at ¶¶ 17-18. Defendant responded to the First Application on May 14, 2018, indicating that "the submitted documentation is insufficient" and that Plaintiff should contact Defendant so Defendant "can provide clarification on what is needed." *Id.* ¶ 19; D.E. 1-2 at 2, 5. Plaintiff alleges that she contacted Defendant and corrected any deficiencies on May 21, 2018. Compl. ¶ 20. On May 25, 2018, Defendant responded that it was still "unable to locate" certain required documents. D.E. 1-2 at 9. Plaintiff alleges that she again supplied Defendant with these documents on June 1, 2018. Compl. ¶ 20. Defendant then sent a letter to Plaintiff on July 17, 2018, indicating that Plaintiff's "application has been incomplete with no activity for over 30 days" and therefore the First Application was terminated. *Id.* ¶¶ 21, 22.

---

[2] The facts are derived from Plaintiff's Complaint, D.E. 1 ("Compl."). When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

On July 19, 2018, Plaintiff, through counsel, sent Defendant a notice of error (the "First Notice") regarding a failure to properly address this First Application. *Id.* ¶¶ 24-26; D.E. 1-5. Defendant responded that

> [Defendant] initiated an Assistance Review Application on May 11, 2018. On May 14, 2018, [Defendant] sent the enclosed Required Information Notice indicating the required documentation needed to begin our review. Additional correspondence was sent on May 25, 2018, requesting updated bank statements. [Defendant] spoke with [Plaintiff] on June 11, 2018 and June 28, 2018, where she advised [Defendant] she will send in updated bank statements reflecting rental income. [Defendant] received one statement; however, we require two complete bank statements. Because we did not receive the statements within the document timeline, the review was closed.

Compl. ¶ 28; D.E. 1-7 at 2.

On September 4, 2018, Plaintiff submitted a second loss mitigation application (the "Second Application") to Defendant. *Id.* at ¶ 29. On September 12, 2018, Defendant responded to the Second Application, indicating that "the submitted documentation is insufficient," again identifying areas of deficiency and instructing Plaintiff to contact Defendant. *Id.* at ¶ 30; D.E. 1-9 at 2, 4. Plaintiff alleges that she complied in full in remedying these deficiencies on September 25, 2018 but did not hear back from Defendant for over one month. Compl. ¶¶ 31-32.

On October 26, 2018, Plaintiff sent Defendant another notice of error (the "Second Notice") regarding (1) Defendant's response to Plaintiff's First Notice, and (2) Defendant's conduct regarding Plaintiff's Second Application. *Id.* ¶ 34; D.E. 1-11. Defendant responded on November 21, 2018, explaining Defendant's position that (1) the issues raised in the First Notice "have been addressed and resolved through [the parties'] previous communications" and (2) the Second Application is still "insufficient or information is still needed," and then noting some deficiencies. Compl. ¶ 38; D.E. 1-12. Defendant has not granted either of Plaintiff's Applications to date. Compl. ¶¶ 41-42.

3

On December 6, 2018, Plaintiff filed the present suit against Defendant in this Court alleging three counts: (I) failure to exercise reasonable diligence in obtaining documents and information to complete the First Application in violation of 12 C.F.R. §§ 1024.41(b) or (c)(3); (II) failure to exercise reasonable diligence in obtaining documents and information to complete the Second Application in violation of 12 C.F.R. §§ 1024.41(b) or (c)(3); (III) failure to properly respond to the First Notice in violation of 12 C.F.R. § 1024.35(e). Compl. ¶¶ 46-93. On March 11, 2019, Defendant moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. D.E. 5. Plaintiff opposed this motion, D.E. 8, and Defendants replied, D.E. 9.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. ANALYSIS

Plaintiff brings this action for violations of Regulation X, 12 C.F.R. § 1024 *et seq.*, which was promulgated under RESPA, 12 U.S.C. § 2601 *et seq.* Compl. ¶¶ 46-93. RESPA "is a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010) (citing 12 U.S.C. § 2605). The purpose of RESPA is to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

"Congress charged the Department of Housing and Urban Development ("HUD") with the administration and enforcement of RESPA." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 756 (3d Cir. 2009) (citing 12 U.S.C. §§ 2607(d)(4), 2617). To this end, HUD "compiled [] the somewhat mysteriously titled 'Regulation X.'" *Id.* (referring to 12 C.F.R. § 1024 *et seq.*). Regulation X sets forth, *inter alia*, a series of requirements that servicers must comply with in servicing a borrower's mortgage loan. *See* 12 C.F.R. § 1024.30. Failure to comply with these

requirements creates liability for a servicer, and a borrower may then enforce these rights pursuant to 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a).

However, alleging a breach alone is insufficient to state a claim. *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. Jan. 25, 2006). A plaintiff must also allege that the breach resulted in "one of two types of damages: (1) actual damages to the borrower as a result of the [servicer's] failure to comply with [Regulation X]; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of [Regulation X]." *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016); 12 U.S.C. § 2605(f)(1)(B). The Court will first determine whether Plaintiff plausibly alleged a violation and then whether Plaintiff plausibly alleged damages.

Counts I and II

Plaintiff alleges that Defendant failed to exercise reasonable diligence in obtaining documents and information to complete the First Application (Count I) and Second Application (Count II) in violation of 12 C.F.R. § 1024.41(b) or (c)(3). Compl. ¶¶ 46-76. Section 1024.41(b) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." § 1024.41(b)(1). This means that

> [i]f a servicer receives a loss mitigation application . . . a servicer shall[] [p]romptly . . . review the loss mitigation application to determine if the loss mitigation application is complete[] and [n]otify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.

§ 1024.41(b)(2)(i)(B). Then, "[i]f a loss mitigation application is incomplete, the notice shall *state the additional documents and information* the borrower must submit to make the loss mitigation application complete and the applicable date [that such information is due]." *Id.* (emphasis added).

As to the First Application, Plaintiff plausibly alleges that Defendant violated Section 1024.41(b)(2)(i)(B). Plaintiff submitted the First Application on May 9, 2018. Compl. ¶¶ 17-18. Defendant timely responded via letter on May 14, 2018, indicating that the First Application was incomplete. *Id.* ¶ 19; D.E. 1-2. Defendant's response indicated that it was missing a letter or bill reflecting homeowner's association or condominium dues. D.E. 1-2 at 5. Additionally, as to Plaintiff's bank statements, Defendant instructed Plaintiff to "[p]lease contact us at [] regarding the document that was received, so we can provide clarification on what is needed." D.E. 1-2 at 5. Defendant did not state which additional bank statement(s) it required to complete the First Application. This is a plain violation of Section 1024.41(b)(2)(i)(B). *See Jackson v. Bank of Am., N.A.*, No. 16- 787, 2017 WL 5598856, at *4 (W.D.N.Y. Nov. 21, 2017) (finding that the defendant "notified [the] [p]laintiffs that their application was incomplete, without specifying which documents the [d]efendant was missing, in plain violation of Section 1024.41."). Thus, Plaintiff plausibly alleged a violation of Section 1024.41(b) as to the First Application.

As to the Second Application, Plaintiff again plausibly alleges a violation of Section 1024.41(b). Plaintiff submitted the Second Application via email and facsimile on September 4, 2018. Compl. ¶ 29. Defendant responded via letter on September 12, 2018.[3] *Id.* at ¶ 30; D.E. 1-9. While Defendant's response did specifically indicate two additional required documents (a borrower assistance form and additional bank statement), Defendant also instructed Plaintiff, as to Plaintiff's federal tax returns, to "[p]lease contact us . . . so we can provide clarification on what is needed." D.E. 1-9 at 4. Defendant did not identify which additional federal tax return(s) it

---

[3] It is unclear when Defendant received Plaintiff's Second Application for purposes of evaluating the timeliness of Defendant's response.

required in order to complete the Second Application. Thus, again, Plaintiff plausibly alleged a violation of Section 1024.41(b) as to the Second Application.

In the alternative, Plaintiff also alleges that Defendant breached Section 1024.41(c)(3) as to the First Application (Count I) and Second Application (Count II). Compl. ¶¶ 46-76. Section 1024.41(c)(3) sets forth a servicer's duties after receiving a *complete* application. *See* 12 C.F.R. § 1024.41(c)(3). Specifically, a servicer is required to, among other things, notify the borrower in writing, "within 5 days" of receiving the application, that the loss mitigation application is complete. § 1024.41(c)(3)(i)(A). An application is "facially complete" when "no additional information is requested in [the servicer's response to the application]" *or* "a borrower submits all the missing documents and information *as stated* in the [servicer's response to the application]." § 1024.41(c)(2)(iv) (emphasis added). Notably, "[a] loss mitigation application is considered 'facially complete' when a borrower submits all additional information as requested *even if the servicer later discovers additional information is needed*[.]" *Necak v. Select Portfolio Servicing, Inc.*, No. 17-1473, 2019 WL 1877174, at *7 (N.D. Ohio Apr. 26, 2019) (citing 12 C.F.R. § 1024.41(c)(2)(iv)) (emphasis added).

Here, Plaintiff alleges that "on May 21, 2018 and June 1, 2018, [Plaintiff] submitted all of the requested documentation to [Defendant]" per Defendant's response to the First Application. Compl. ¶ 20. Accepting Plaintiff's factual allegations as true, Plaintiff plausibly established that the First Application was complete on at least June 1, 2018. Yet, Defendant failed to acknowledge this complete application within five days (or to date), in violation of Section 1024.41(c)(3)(i)(A). Plaintiff therefore plausibly states a violation of Section 1024.41(c)(3)(i)(A) as to the First Application (Count I).

Additionally, Plaintiff alleges that "[o]n September 25, 2018, [Plaintiff] submitted all of the requested documentation to [Defendant]" per Defendant's response to the Second Application. *Id.* ¶ 31. Again, accepting Plaintiff's factual allegations as true, Plaintiff plausibly established that the Second Application was complete on at least September 25, 2018. Yet, Defendant again failed to acknowledge this compete application within five days (or to date), violating Section 1024.41(c)(3)(i)(A). *Id.* ¶ 32. Plaintiff plausibly alleged a violation of Section 1024.41(c)(3)(i)(A) as to the Second Application (Count II).

Count III

Plaintiff further alleges that Defendant failed to properly respond to the First Notice in violation of 12 C.F.R. § 1024.35(e). Under 12 C.F.R. § 1024.35(b)(11), a borrower may submit written notice to a servicer asserting any "error relating to the servicing of a borrower's mortgage loan." Servicers are obligated to respond to such notice of error by either correcting any errors identified by the borrower, 12 C.F.R. § 1024.35(e)(1)(i)(A), or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred," 12 C.F.R. § 1024.35(e)(1)(i)(B). A borrower plausibly alleges that a servicer did not conduct a reasonable investigation when the servicer gave the borrower contradictory instructions but nonetheless concluded that no error occurred. *See Alfaro v. Wells Fargo N.A.*, No. 16-7950, 2017 WL 4969334, at *5 (D.N.J. Nov. 1, 2017) (finding it plausible that a servicer failed to conduct a reasonable investigation when the servicer's "notice-of-error response contradicted the [servicer's earlier] correspondence concerning the [plaintiff's loss mitigation application]"); *see also Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 805 (E.D. Pa. Sept. 24, 2014) (finding it plausible that a servicer failed to conduct a reasonable investigation

9

when the servicer "sent [the plaintiff] two letters with contradictory explanations for why her loan could not be modified.").

Here, Plaintiff sent Defendant the First Notice on July 19, 2018, asserting that Defendant violated either Section 1024.41(b)(1), by failing to exercise reasonable diligence to complete the First Application, or Section 1024.41(c)(3), by failing to acknowledge that the First Application was complete. Compl. ¶¶ 23, 84. Defendant responded that "no errors" occurred in its application review process because it "require[d] two complete bank statements" from Plaintiff and only received one. *Id.* at ¶ 28; D.E. 1-7 at 2. However, on May 25, 2018, Defendant only requested *one* additional bank statement, D.E.1-2 at 9 ("[p]lease provide *one* more recent Bank Statement") (emphasis added), which Plaintiff then provided. Compl. ¶ 87. Defendant's contradictory assertions as to how many bank statements it required plausibly indicates that Defendant failed to conduct a reasonable investigation into the First Notice. Plaintiff sufficiently alleged a violation of 12 C.F.R. § 1024.35(e) in Defendant's response to the First Notice (Count III).[4]

Damages

As noted above, alleging a violation of Regulation X alone is insufficient to state a claim. *Hutchinson*, 410 F. Supp. 2d at 383. Plaintiff must also allege that the violation resulted in actual damages or statutory damages. *Giordano*, 160 F. Supp. 3d at 781. Here, Plaintiff seeks actual damages and statutory damages as to all Counts.

---

[4] The present action differs from *Schepisi v. Santander Bank, N.A.*, No. 18-15006, 2019 WL 699959, at *3 (D.N.J. Feb. 20, 2019), where the Court found that a borrower's complaint failed to allege sufficient facts to support a claim under Section 1024.35 because the complaint contained "very few factual allegations describing actual communications that took place between [the] [p]lantiffs and [d]efendants." In *Schepisi*, the complaint contained "no allegations that [the] [p]laintiffs sent a [notice of error] to [the] [d]efendants at any time, nor allegations explaining when or how [the] [d]efendants responded." *Id.* Here, as explained, Plaintiff's Complaint describes in detail actual communications that took place between the parties leading up to and including Defendant's response to Plaintiff's First Notice on July 19, 2018. Compl. ¶¶ 18-29.

10

"Actual damages" are "amount[s] awarded to a complainant to compensate for a proven injury or loss," or "damages that repay actual losses." *Vallies v. Sky Bank*, 591 F.3d 152, 157 (3d Cir. 2009) (citing Black's Law Dictionary 445 (9th ed. 2009)). In order to plausibly allege actual damages under RESPA, "the borrower has the responsibility to present specific evidence to establish the causal link between the financing institution's violation and [the borrower's] injuries." *Giordano*, 160 F. Supp. 3d at 781. Costs for a plaintiff's actions taken *prior* to a defendant's RESPA violation will not be considered actual damages. *Id.* at 782.

First, Plaintiff seeks actual damages for costs and fees associated with sending the Notices. Compl. ¶¶ 60 (Count I), 74 (Count II), 91 (Count III). Under RESPA, "[a]ctual damages encompass compensation for any pecuniary loss including such things as . . . expenses for preparing, photocopying and obtaining certified copies of correspondence." *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000) (citing *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1164 (M.D. Ala. 1999)). However, "pre-violation letter preparation costs" for an initial loss mitigation application are not actual damages because no violation has yet occurred. *Giordano*, 160 F. Supp. 3d at 782; *see also Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 592 (D.N.J. 2016) (explaining that "[e]xpenses that would be incurred regardless of a violation" are not actual damages under RESPA). Conversely, "administrative costs such as postage, photocopying, scanning, and travel expenses that [a borrower] would *not* have incurred if [a] [d]efendant had complied with RESPA," are actual damages. *Jackson v. Bank of Am., N.A.*, No. 16- 787, 2017 WL 5598856, at *6 (W.D.N.Y. Nov. 21, 2017) (emphasis added).

Here, Plaintiff plausibly alleges actual damages in all Counts as to the expenses associated with sending the Notices. In Count I, Plaintiff alleges that Defendant failed to exercise reasonable

11

diligence in obtaining documents and information to complete the First Application (described above), which forced Plaintiff send the First Notice. Compl. ¶ 60. In Counts II and III, Plaintiff alleges that Defendant similarly failed to appropriately respond to the Second Application (Count II), and the First Notice (Count III), which forced Plaintiff send the Second Notice. *Id.* ¶¶ 74, 91. In other words, Plaintiff would not have had to send the Notices had Defendant complied with its obligations under Regulation X, as complained of in Counts I, II, and III. Plaintiff has therefore plausibly alleged actual damages in Counts I, II, and III, as to the costs associated with sending the Notices.

Plaintiff also seeks actual damages for attorney's fees incurred to "correct [Defendant's] errors and to submit multiple loss mitigation applications which would have been unnecessary but for [Defendant's] actions." Compl. ¶¶ 40; *see also id.* ¶¶ 62 (Count I), 76 (Count II), 93 (Count III). "Attorney's fees *for brining a RESPA suit* are not actual damages under the statute" because these fees are separately recoverable under Section 2605(f)(3). *Giordano*, 160 F. Supp. 3d at 783 (quoting *Kassner v. Chase Home Fin., LLC*, No. 11-1064, 2012 WL 260392, at *7 (D. Mass. Jan. 27, 2012)) (internal quotation marks omitted) (emphasis added). However, attorneys' fees incurred *to remedy a RESPA violation* "are recoverable as actual damages under RESPA if they are not incurred in connection with brining a suit under the statute." *McGahey v. Fannie Mae*, 266 F. Supp. 3d 421, 441 (D. Me. 2017); *see also Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) (finding that "reasonable attorney's fees incurred as a result of having to send additional correspondence due to Defendant's alleged failure to respond" are actual damages). Here, Plaintiff seeks attorney's fees incurred to remedy Defendant's violations. Compl. ¶¶ 40. Thus, to the extent that these attorney's fees do not include costs of bringing this

litigation, Plaintiff plausibly alleged actual damages in Counts I, II, and III, as to attorney's fees associated with remedying Defendant's alleged violations.

Plaintiff further seeks actual damages to account for a higher interest rate (when/if her modification application is granted) because "mortgage interest rates have increased during the period [Defendant] has improperly delayed the loan modification process." *Id.* at ¶ 41. Additionally, Plaintiff seeks actual damages for the difference between the amount she has paid/currently pays, and the amount that she would have paid had her modification application been timely granted. *Id.* at ¶ 42. However, RESPA "does not impose an affirmative duty on a servicer to provide any borrower with a specific loss mitigation option." *McGahey*, 266 F. Supp. 3d at 442 (citing 12 C.F.R. § 1024.41(a)). RESPA only requires "a reasonable investigation and statement of reasons" in response to a loss mitigation application. *Id.* Therefore, a servicer can deny an application without violating Regulation X. *See id.* ("[The defendant] could therefore have fulfilled its statutory obligations without correcting the allegedly erroneous [loan modification application] denial; RESPA requires that servicers provide borrowers with information, not that they necessarily accept a borrower's assertion of error and correct it."). Here, Plaintiff cannot say that but for Defendant's violation, Plaintiff would have received a lower interest rate. Defendant could have denied the First and Second Application without violating Regulation X. Therefore, Plaintiff has not plausibly alleged actual damages regarding a higher interest rate. *See McGahey*, 266 F. Supp. 3d at 442 (finding the same).

Plaintiff also seeks statutory damages in all Counts. Compl. ¶¶ 62 (Count I); 76 (Count II); 93 (Count III). Section 2605(f) provides for statutory damages up to $2,000 per violation "in the case of a pattern or practice of noncompliance with the requirements of this section[.]" 12 U.S.C. § 2605(f). A "pattern or practice" involves "a standard or routine way of operating."

*Mehnert v. United States Bank Nat'l Ass'n*, No. 17-4985, 2018 WL 1942523, at *5 (D.N.J. Apr. 23, 2018) (quoting *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009)). "[A] pattern or practice of noncompliance requires more than one alleged violation of RESPA." *Herrera v. Cent. Loan Admin. & Reporting*, No. 17-4774, 2017 WL 4548268, at *4 (D.N.J. Oct. 12, 2017) (citing *Giordano*, 160 F. Supp. 3d at 785). However, several instances of noncompliance satisfy a plaintiff's burden at the motion to dismiss stage. *See id.* (finding a plausible pattern or practice when the plaintiffs alleged "several instances of noncompliance with [the] [p]laintiffs' requests and letters"). While there is no "magic number," courts have found a plausible pattern or practice when the plaintiff alleged "more than two violations of RESPA." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 445-49 (E.D.N.Y. 2013).

Here, Plaintiff plausibly alleges a pattern or practice. As discussed above, Plaintiff has plausibly pled at least five violations of Regulation X: (1) a violation of Section 1024.41(b) as to the First Application; (2) a violation of Section 1024.41(b) as to the Second Application; (3) a violation of Section 1024.41(c) as to the First Application; (4) a violation of Section 1024.41(c) as to the Second Application; and (5) a violation of Section 1024.35(e) as to the First Notice. Therefore, Plaintiff sufficiently stated a claim for statutory damages under Counts I, II, and III.

## IV. CONCLUSION

In sum, the Court denies Defendants' motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) except that Plaintiff's claimed damages based on a higher interest rate are not plausibly pled. D.E. 5. An appropriate Order accompanies this Opinion.

Dated: July 16, 2019

John Michael Vazquez, U.S.D.J.